```
FILED
```

AUG - 7 2003

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

       Plaintiff,

  v.

J. JESUS ARREGUIN, et al.,

       Defendants.

_____/

NO. CR. S-02-104 LKK

O R D E R

**TO BE PUBLISHED**

    Defendants in this federal criminal prosecution move for discovery concerning an affidavit filed in support of a state-authorized wiretap (Orange County wiretap # 02-01) and the investigation reports concerning the subject of that wiretap, Reyna-Madrigal, and the subject of an earlier wiretap, Mora.[1]

////

////

_____

    [1] The motion was brought by defendant Jesus Arreguin, and joined by defendants Guillen-Campos, Hurtado Cuervas, Hurtado, Mendoza and Valdez-Santos.

1

1   Because the state wiretap information was used to obtain a
2   further wiretap issued by this court, defendants seek discovery
3   in order to attack those underlying wiretaps.  At issue is
4   whether defendants' request may be granted in light of the
5   government's privilege to keep confidential the identity of its
6   informants.

7        Before discussing the parties' arguments, I briefly set out
8   the statutory scheme of Title III of the Omnibus Crime Control
9   and Safe Streets Act of 1968, under which wiretaps are
10  available.  In particular, I focus on the provisions that relate
11  to disclosing or using the contents of, or the underlying
12  application for, a wiretap.

13                                  I.

14                  **TITLE III DISCLOSURE PROVISIONS**

15       Title III prohibits the interception of wire or oral
16  communication "[e]xcept as otherwise specifically provided in
17  this chapter . . . ."  18 U.S.C. § 2511.  It also prohibits the
18  use and disclosure of intercepted communications, with narrow
19  exceptions.  See id.; 18 U.S.C. §§ 2517, 2518.  To protect
20  confidentiality and prevent tampering, applications for wiretaps
21  and the orders thereon must be sealed by the issuing court, and
22  can only be disclosed "upon a showing of good cause before a
23  judge of competent jurisdiction . . . ."  18 U.S.C.
24  ////
25  ////
26  ////

§ 2518(8)(b).[2]  In specific circumstances, though, and for the benefit of persons against whom wiretaps are directed, Title III mandates the disclosure of applications and orders for wiretaps. Title III also provides for disclosure of intercepted communications and evidence derived therefrom under the circumstances discussed below.

Disclosure of the contents of intercepted communications or evidence derived therefrom may be made between investigative or law enforcement officers who obtained knowledge of the intercepted communications or evidence by authorized means.  <u>See</u> 18 U.S.C. § 2517(1).  Such officers may use these communications or evidence in the proper performance of their duties.  <u>See</u> 18 U.S.C. § 2517(2).[3]

---

[2]  A judge of competent jurisdiction is defined as:

(a) a judge of a United States district court or a United States court of appeals; and
(b) a judge of any court of general criminal jurisdiction of a State who is authorized by a statute of that state to enter orders authorizing interceptions of wire, oral, or electronic communications.

18 U.S.C. § 2510(9).

[3]  While this provision does not specify that "appropriate" uses include the disclosure of intercepted communications to supply probable cause for a search warrant or wiretap, courts have looked to legislative history to establish the propriety of disclosure for such purposes.  <u>See</u>, <u>e.g.</u>, <u>Employees of McDonnel Douglas Corp. v. Pulitzer Publishing Co.</u>, 895 F.2d 460, (8th Cir. 1990)(Congress "envision[ed] use of the contents of intercepted communications . . . to establish probable cause to search")(quoting S.Rep.No. 1097, 90th Cong., 2d Sess., reprinted in 1968 U.S. Cong. & Admin. News, pp. 2112, 2188); <u>United States v. Vento</u>, 533 F.2d 838 (3d Cir. 1976)(since Congress intended intercepted communications to be used in applications for search warrants under § 2517(2), it follows that the section also authorizes use in applications for

The contents of intercepted communications or evidence derived therefrom may also be disclosed in court proceedings by a person giving testimony under oath.  See 18 U.S.C. § 2517(3). Before intercepted communications or evidence derived therefrom may be disclosed in a court proceeding, however, each party to the proceeding must be provided "with a copy of the court order, and accompanying application, under which the interception was authorized or approved."  18 U.S.C. § 2518(9).[4]  Where a party who was aggrieved by a wiretap moves to suppress communications or other evidence derived from the wiretap, the judge has discretion to disclose the contents of intercepted communications or evidence derived therefrom to the moving party.  18 U.S.C. § 2518(10)(a).[5]

_____

additional wiretaps); Chandler v. United States Army, 125 F.3d 1296, 1301 n.2 (9th Cir. 1997)(for other purposes, quoting with favor the legislative history of the section, including the statement that officers could use intercepted communications to supply probable cause).

[4]  By reference to parties, this provision appears to contemplate only proceedings with more than one party, as opposed to ex parte applications for search warrants or wiretaps.  Cf. Gelbard v. United States, 408 U.S. 41, 54 (1972)(to the extent that 18 U.S.C. § 3504 was applicable to evidence propounded in grand jury proceedings, a "party aggrieved," under that section could only be a witness, "for there is no other 'party' to a grand jury proceeding").  As already noted, courts have looked to § 2517(2) to authorize disclosure for the purpose of supplying probable cause in ex parte proceedings, see note 3, supra, and have not required notice to persons aggrieved by the wiretap prior to an order authorizing it.

[5]  An aggrieved person is one "who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed."  18 U.S.C. § 2510(11).

1    With these statutory provisions in mind, I turn to the case

2 at hand.

3                              II.

4                      DEFENDANTS' MOTION

5    This motion seeks discovery of the application in support

6 of the Orange County wiretap and also other evidence which,

7 defendants argue, would demonstrate that affidavits in support

8 of state court wiretaps contained material misrepresentations.

9 Because defendants' requests are governed by different law, I

10 discuss them separately.

11 A.   DISCLOSURE OF THE ORANGE COUNTY WIRETAP APPLICATION

12    The request for disclosure of the Orange County wiretap

13 application is governed by 18 U.S.C. § 2518(9), which requires

14 disclosure of the application to parties to a proceeding in

15 which evidence derived from a wiretap will be offered.  The

16 government seeks to avoid compliance with defendants' request by

17 stating that it will not offer into evidence any of the

18 communications intercepted under the Orange County wiretap.  As

19 the government comes very close to acknowledging in its

20 supplemental briefing, however, because the federal wiretap was

21 supported by evidence obtained in the execution of the Orange

22 County wiretap, evidence obtained via the federal wiretap is

23 evidence obtained by virtue of the Orange County wiretap.  <u>See</u>,

24 <u>e.g.</u>, <u>United States v. Vento</u>, 533 F.2d 838, 847 (3d Cir.

25 1976)(noting, with respect to defendant's motion to suppress

26 fruits of a second wiretap, that if original wiretap had been

1   improvidently granted, the government could not have used the

2   fruits of that wiretap to obtain authorization for a second

3   wiretap).   Thus, the application and order for the Orange County

4   wiretap should be disclosed to each party to any proceeding in

5   which the government desires to introduce evidence derived

6   therefrom.[6]   Indeed, the government has disclosed the

7   application and order to moving defendant, Arreguin, but has

8   redacted much of the affidavit in support of the application.

9   It contends that the redacted information could put an informant

10  in danger and jeopardize an ongoing investigation.   The real

11  question before the court relative to the state wiretap, then,

12  is whether Title III, which mandates disclosure of the

13  application, allows the government to redact information.

14      The government relies on Roviaro v. United States, 353 U.S.

15  53 (1957), which recognized that the government has a "privilege

16  to withhold from disclosure the identity of persons who furnish

17  information of violations of law to officers charged with

18  enforcement of that law."   Id. at 59.   Roviaro held that,

19  because "protecting an informant's identity serves important law

20  enforcement objectives, determining whether to reveal an

21  informant's identity to a defendant requires balancing the needs

22  of law enforcement against the individual's interest in having a

---

24  [6]   It is noteworthy that the disclosure requirements of 18
    U.S.C. § 2518(9) are not limited to parties to the wiretap, as are
25  the notice and disclosure provisions of §§ 2518(8)(d) and
    2518(10)(a).   Because § 2518(9) requires disclosure to "each
26  party," all defendants would appear to have standing under the
    statute to request a copy of the application at issue.

1  fair trial." <u>United States v. Rawlinson</u>, 487 F.2d 5, 7 (9th

2  Cir. 1973)(citing <u>Roviaro</u>, 353 U.S. at 60-61). "Where the

3  disclosure of an informer's identity, or the contents of his

4  communications, is relevant and helpful to the defense of an

5  accused," however, "or is essential to a fair determination of a

6  cause, the privilege must give way." <u>Roviaro</u>, 353 U.S. at 61.

7  The <u>Roviaro</u> Court thus noted that in cases where the

8  communications of an informer were relied upon to establish

9  probable cause, "the Government has been required to disclose

10 the identity of the informant unless there was sufficient

11 evidence apart from his confidential communication." <u>Id.</u>   On

12 the other hand, where the reliability of the informant is

13 established, the government need not disclose the identity of a

14 confidential informant where the sole issue is probable cause.

15 <u>See</u> <u>United States v. Mehciz</u>, 437 F.2d 145, 148-49 (9th Cir.

16 1971)(citing <u>McCray v. Illinois</u>, 386 U.S. 300 (1967)).[7]   As I

17 _____

18     [7] Defendants argue that under <u>Alderman v. United States</u>, 394
U.S. 165 (1969), <u>Roviaro</u> does not apply where a defendant seeks
information in connection with a wiretap. <u>Alderman</u> does not extend
19 as far as the defendants contend. <u>Alderman</u> concerned a case where
the underlying wiretap had already been found to be without
20 probable cause, and where the remaining issue was whether some of
the government's evidence was tainted by the unconstitutional
21 wiretap.   In order to substantiate his argument that the evidence
was tainted, defendant sought transcripts of the intercepted
22 conversations.   The Court held that such transcripts had to be
disclosed "even though attended by potential danger to the
23 reputation or safety of third parties or to the national
security−unless the United States would prefer dismissal of the
24 case to disclosure of the information." <u>Id.</u> at 181.   The Court
made clear that "disclosure will be limited to the transcripts of
25 a defendant's own conversations and of those which took place on
his premises." <u>Id.</u> at 184.   Thus, because <u>Alderman</u> concerned
26 conversations to which the defendant was a party or to

1   now explain, however, <u>Roviaro</u> and its progeny do not establish

2   that the government privilege described there applies where

3   Title III mandates disclosure of the application and order for a

4   wiretap.[8]

5       Title III was enacted to provide greater protection than

6   that mandated by the Constitution under then-existing precedent.

7   <u>See</u> <u>Gelbard v. United States</u>, 408 U.S. 41, 48 n. 7 (1972).[9]  The

8   statutory requirements for wiretap authorization are far more

9   _____

10  conversations on defendant's premises, the court thought it highly
    unlikely that the transcripts would involve information not
11  otherwise within defendant's knowledge.  <u>See</u> <u>id.</u> at 185 ("it can
    safely be assumed that much of [the information] he will already
12  know, and disclosure should involve a minimum hazard to others.")
    In any event, as I explain in the body of this order, <u>Alderman</u>,
13  like <u>Roviaro</u>, was decided on constitutional grounds and not under
    Title III.  <u>See</u> <u>id.</u> at 175.
14
        [8]  The government cites to <u>United States v. King</u>, 478 F.2d 494
15  (9th Cir. 1973), for the proposition that <u>Roviaro</u> applies to the
    matter at bar.  <u>King</u>, however, is inapposite.  It does not concern
16  the disclosure of an application or order for a wiretap under Title
    III.  Rather, two defendants in that case sought, on
17  constitutional grounds, the identity of an informant to aid in
    their contention that the wiretap had been issued without probable
18  cause.  Clearly, in such circumstances, <u>Roviaro</u> and its progeny
    apply.
19
        [9]  <u>Gelbard</u> observed:
20
        In stating the problem addressed by Congress in Title
21      III, the Senate report . . . . stressed that Title III
        would provide the protection for privacy lacking under
22      the prior law: "The need for comprehensive, fair and
        effective reform setting uniform standards is obvious.
23      New protections for privacy must be enacted.  Guidance
        and supervision must be given to State and Federal law
24      enforcement officers.  This can only be accomplished
        through national legislation."
25
    <u>Id.</u> (quoting S.Rep.No. 1097, 9th Cong., 2d Sess., 66 (1968); U.S.
26  Cong. & Admin. News, p. 2156).

1  burdensome than those mandated by the Constitution.  <u>See</u> 18

2  U.S.C. § 2518 (setting forth requirements for applications and

3  orders for wiretaps); <u>United States v. Donavaro</u>, 877 F.2d 583,

4  587 (7th Cir. 1989)(noting that Title III requires more than

5  probable cause for the issuance of a wiretap).  Thus, although

6  <u>Roviaro</u> governs where a defendant asserts that due process

7  dictates disclosure, it does not govern where the defendant

8  asserts a right under the disclosure provisions of Title III's

9  more stringent statutory scheme.

10      In support of its contention that <u>Roviaro</u> does apply to

11  requests for the disclosure of wiretap applications, the

12  government cites to two cases which held that information could

13  be redacted from the wiretap application before disclosure.  I

14  now examine those cases, and explain why I do not find them

15  persuasive.

16      The first argument in support of the government's

17  contention is a very tentative one raised in <u>United States v.</u>

18  <u>Yoshimura</u>, 831 F.Supp. 799 (D. Haw. 1993).  The court there

19  asserted that there was "no statutory provision that mandates

20  that affidavits filed in support of the application be

21  released."  <u>Id.</u> at 805.  This observation seems quite strained,

22  putting form over substance.  Title III requires that an

23  application must include a broad statement of relevant facts,

24  specifying numerous details.  <u>See</u> 18 U.S.C. § 2518(1)

25  (applications must include, <u>inter alia</u>, a full and complete

26  statement of the facts relied on by the applicant to justify

9

1   belief that order should be issued, as well as a full and
2   complete statement as to whether other investigative procedures
3   have been tried, and failed).  Thus, where an affidavit supplies
4   the information required by the statute to be included in the
5   application, it must be considered part of the application.  To
6   the extent, then, that Title III requires that the application
7   be released, affidavits that are part of the application must
8   also be released.

9        The second contention, also derived from Yoshimura, is that
10  Title III's good cause standard for disclosing sealed
11  applications and orders modifies the provision requiring
12  disclosure of applications and orders.  See id.  According to
13  this reasoning, the court could disclose applications and orders
14  in redacted form if it found that there was no good cause to
15  disclose the redacted information.  See id.  As I now explain,
16  the statute does not support this interpretation.

17       It is true that § 2518(8)(b) provides that applications and
18  orders for wiretaps should not be unsealed absent a showing of
19  good cause.  The statute goes on to anticipate different
20  situations where unsealing would be appropriate.  Section
21  2518(8)(d) requires that notice be given to those whose phones
22  had been tapped.  It also provides that the judge who issued the
23  wiretap may disclose to wiretap subjects "such portions of . . .
24  wiretap applications or affidavits as the judge determines to be
25  in the interest of justice."  Under this provision, it is
26  apparent that the court is provided discretion in making the

1   decision as to what should be disclosed.  By contrast, where the

2   government wishes to introduce evidence derived from a wiretap,

3   § 2518(9) requires that each party to the proceeding must

4   receive a copy of the application and order for a wiretap before

5   the evidence may be received.   Notably, § 2518(9) does not

6   include any of the language of discretion found in § 2518(8)(d).

7   Worded as an unqualified requirement, it appears that § 2518(9)

8   represents a judgment by Congress that the good cause

9   requirement is satisfied where the government plans to use

10  evidence derived from a wiretap.[10]   As for <u>Yoshimura</u>'s

11  conclusion that, for good cause, portions of applications and

12  orders for wiretaps might nonetheless be redacted, the

13  contention is contradicted by the plain language of the statute.

14  Section § 2518(8)(d) demonstrates that Congress knew how to tell

15  the courts when they could decide to disclose only portions of

16  applications or orders for wiretaps, since it provides that the

17  judge may disclose "such portions" as were "in the interest of

18  justice."  <u>See id.</u>.  Section 2518(9) contains no similar

19  allowances, requiring the conclusion that when it mandates

20  furnishing a copy of the application and order for wiretap,

21  § 2518(9) means the whole application and order.  <u>See Russello</u>

22  <u>v. United States</u>, 464 U.S. 16, 23 (1983)("[W]here Congress

23

24          [10]   The purpose of § 2518(9) supports this conclusion, as it
        was "'designed to give the party an opportunity to make a pre-trial
25      motion to suppress.'"  <u>United States v. Manuszak</u>, 438 F.Supp. 613,
        621 (E.D. Pa. 1977)(quoting S.Rep.No. 1097, 9th Cong., 2d Sess.,
26      1968 U.S. Code Cong. & Admin. News, pp. 2194-95).

                                    11

1 includes particular language in one section of a statute, but
2 omits it in another section of the same Act, it is generally
3 presumed that Congress acts intentionally and purposely in the
4 disparate inclusion or exclusion.)

5    The government's third argument is supplied by the Seventh
6 Circuit in United States v. Donavaro, 877 F.2d 583 (7th Cir.
7 1989). Donavaro held that the government could redact the
8 wiretap application and "choose to defend their warrant without
9 relying on the redacted information . . . ." Id. at 588. To
10 reach this conclusion, the Seventh Circuit noted the principle
11 that "[s]tatutes requiring disclosure, but silent on the
12 question of privilege, do not override customary privileges."
13 Id. (citing Upjohn Co. v. United States, 449 U.S. 383, 397-98
14 (1981)). While the proposition may well be correct, it does not
15 apply to Title III, since Congress was not silent on the
16 question of privilege in this statute. Indeed, Congress took
17 deliberate action to preserve the privilege where privileged
18 communications were intercepted. See 18 U.S.C. § 2517(4)("No
19 otherwise privileged wire, oral, or electronic communication
20 intercepted in accordance with, or in violation of, the
21 provisions of this chapter shall lose its privileged
22 character"). As the Supreme Court has noted, "we would not
23 presume to ascribe [differences in a statute] to a simple
24 mistake in draftsmanship." Russello, 464 U.S. at 23. In sum,
25 the fact that Congress provided for the privilege relative to
26 intercepted communications but did not preserve the government's

1  privilege to keep its informants confidential, requires

2  precisely the opposite of the conclusion reached by <u>Donavaro</u>;

3  the natural implication is that Congress did not intend for the

4  government privilege to apply.

5       Because the plain language of Title III does not provide

6  for disclosure of redacted applications and orders under

7  § 2518(9), and given the legislative purpose of providing more

8  stringent requirements under Title III than those found by the

9  courts in the Constitution, I must conclude that the government

10  is required to disclose wiretap applications and orders in their

11  entirety before it may use evidence derived from such wiretaps.[11]

12  As another district court has observed:

13      I recognize that where the wiretap application and
    order contain sensitive information the disclosure of

14      which could prejudice an ongoing investigation, the
    government may be put to a hard choice of either

15      foregoing its proceeding against the defendant or
    risking the frustration of its investigation.  But

16      this is a choice which Congress has in plain language
    decreed the government must make when it seeks to

17      deprive a person of his liberty on the basis of
    wiretap evidence.  In truth it is not much different

18      than a number of other difficult decisions which the
    government must make in pursuing a criminal

19      prosecution, such as when it must decide whether to
    proceed with a case that will require revelation of

20      the identity of an informer.

21  <u>United States v. Manuszak</u>, 438 F.Supp. 613, 625 (E.D. Pa. 1977).

22  ////

23  ////

24  _____

25      [11] Because the government is in possession of the application
and order in their unredacted forms, this court need not deal with
the knotty problem of whether it may order the state court to

26  unseal the application and order.

**B.   DISCLOSURE OF EVIDENCE RELATING TO THE APPLICATIONS FOR
      STATE-AUTHORIZED WIRETAPS**

Defendants plan to argue that the applications for the state court wiretaps are not only facially deficient under Title III, but also contain material misrepresentations. Specifically, defendants wish to argue that the government misrepresented to the state court the necessity of the wiretaps, as it could have uncovered the necessary evidence through ordinary investigative techniques with the help of its informants.  To support this theory, defendants seek the investigative reports for the Mora and Reyna-Madrigal investigations.

Although at least some of the defendants appear to have standing to challenge the state court wiretaps,[12] it is unclear whether they are entitled to discover the investigative reports underlying the applications for those wiretaps.  See Fed. R. Crim. P. 16(a)(2)(rules do not authorize the discovery of internal government documents made by a government agent in

---

[12]   I note that although all defendants may have standing to challenge the federally authorized wiretap, most do not contend that they would have standing to directly challenge the underlying state-authorized wiretaps.  Although the Ninth Circuit has not discussed whether a defendant who has standing to attack one wiretap may attack the validity of an underlying wiretap to which he was not a party, other circuits have uniformly held that under these circumstances, "one cannot assert indirectly what he cannot assert directly."  United States v. Scasino, 513 F.2d 47, 51 (5th Cir. 1975); see also United States v. Williams, 580 F.2d 578, 583 (D.C. Cir. 1978); United States v. Wright, 524 F.2d 1100, 1102 (2d Cir. 1975); United States v. Gibson, 500 F.2d 854, 855 (4th Cir. 1974).

1   connection with an investigation).  Accordingly, the court will

2   request further briefing on this issue.

                                III.

                             CONCLUSION

5       Based on the foregoing, the court hereby ORDERS as follows:

6       1.  Defendants' motion for discovery of the Orange County

7   affidavit is GRANTED.  The government shall PROVIDE to each

8   party unredacted copies of the application and order for the

9   Orange County wiretap if it intends to introduce evidence

10  derived therefrom in its case against defendants.[13]

11  ////

12  ////

13  ////

14  ////

15  ////

16  ////

17  _____

18      [13]  By virtue of proceedings in this court, an unredacted
    version of the Orange County application has been filed under seal,
19  and thus, the court could simply order it unsealed.  To do so,
    however, would appear to deprive the government of an opportunity
20  to seek appellate review.  Given the fact that other courts have
    reached a different conclusion, such a result seems inappropriate.
21      While the Ninth Circuit has not decided whether a
    "discovery order disposing of an asserted claim of privilege could
22  be independently appealed under the collateral order doctrine,"
    United States v. Fernandez, 231 F.3d 1240, 1245 n. 5 (9th Cir.
23  2000), as a general rule, discovery orders are not appealable final
    orders.  See id. At 1245.  Thus, this court recognizes that, in
24  order to take an appeal, the government may choose not to provide
    the unredacted application, suffering the exclusion of much of the
25  evidence in this case.  Assuming that such action necessitates the
    dismissal of the government's case, the government will then be
26  free to appeal.  See id.

1      2.  Within fifteen (15) days of the effective date of this

2  order, defendants shall SUBMIT further briefing concerning the

3  authority under which this court might allow discovery of the

4  government's investigative reports.  The government may respond

5  within seven (7) days thereafter.

6      IT IS SO ORDERED

7      DATED:  August 7, 2003.

 

                   LAWRENCE K. KARLTON
                   SENIOR JUDGE
                   UNITED STATES DISTRICT COURT

                 United States District Court
                          for the
                 Eastern District of California
                       August 7, 2003


              * * CERTIFICATE OF SERVICE * *


                              2:02-cr-00104


    USA

        v.

    Magana


_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  August 7, 2003, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


        Carolyn K Delaney                    AR/LKK
        United States Attorney
        501 I Street
        Suite 10-100
        Sacramento, CA  95814

        Steve Emery Teich
        Law Offices of Steve Emery Teich
        Fox Plaza Building
        1390 Market Street
        Suite 310
        San Francisco, CA  94102

        Hayes H Gable III
        Law Offices of Hayes H Gable III
        428 J Street
        Suite 350
        Sacramento, CA  95814

        Evans D Prieston
        111 W St John Street
        Suite 555
        San Jose, CA  95113

        Carl Edward Larson
        Law Office of Carl Larson

Orangevale, CA  95662

Michael D Long
Law Office of Michael D Long
1001 Sixth Street
Suite 400
Sacramento, CA  95814

Charles Clayton Pierpoint III
1700 South El Camino Real
Suite 420
San Mateo, CA  94402

Fred N Dawson
Law Offices of Fred Dawson
922 Second Street
Suite 200
Sacramento, CA  95814

J Tony Serra
Law Offices of J Tony Serra
506 Broadway
San Francisco, CA  94133

John P Balazs
Law Offices of John P Balazs
916 Second Street
Second Floor
Sacramento, CA  95814

Karen L Snell
Clarence and Snell LLP
Van Ness/Ellis Professional Building
899 Ellis Street
San Francisco, CA  94109

Harold J Rosenthal
Riordan and Rosenthal
523 Octavia Street
San Francisco, CA  94102

Marc Holden Axelbaum
Clarence and Snell
899 Ellis Street
San Francisco, CA  94109


SERVICE BY INTER OFFICE:

FD       US MARSHAL       PROBATION       PRETRIAL  SERVICES


                                   Jack L. Wagner, Clerk

                              BY: _____
                                   Deputy Clerk